UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KATINA MILBURN,

        Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

No. 1:16-CV-3081-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 15).

## JURISDICTION

Katina Milburn, Plaintiff, applied for Title II Disability Insurance benefits (DIB) and Title XVI Supplemental Security Income benefits (SSI) on January 10, 2013. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on November 26, 2014 before Administrative Law Judge (ALJ) Kimberly Boyce. Plaintiff testified at the hearing, as did Vocational Expert (VE) Steve Duchesne. On December 5, 2014, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 42 years old. She has past relevant work experience as a child care attendant, home attendant, and dining room attendant. Plaintiff alleges disability since May 10, 2009, on which date she was 36 years old. Plaintiff's date last insured for Title II DIB benefits was December 31, 2014.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) improperly weighing the medical opinions; and 2) improperly rejecting Plaintiff's testimony about her symptoms.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 3**

impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404,1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 4**

consisting of diabetes mellitus, peripheral neuropathy, lumbar strain, left shoulder impingement, obstructive sleep apnea, obesity, affective disorder, and anxiety disorder; 2) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform a range of light work as defined in 20 C.F.R. §§ 404.1520(b) and 416.967(b) which includes the following: she can stand and walk for about four hours and sit for more than six hours with normal breaks; can lift, carry, push and pull within light exertional limits; can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can occasionally reach overhead and otherwise frequently reach with the left upper extremity; can perform work in which exposure to vibration and/or hazards is not present; can understand, remember and carry out unskilled, routine and repetitive work; can cope with occasional work setting changes and occasional interaction with supervisors; can work in proximity to coworkers, but not in a team or cooperative effort; and can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact is not precluded; 4) Plaintiff's RFC does not allows her to perform her past relevant work, but it does allow her to perform other jobs existing in significant numbers in the national economy, including office helper, document preparer and final assembler. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**OPINION OF DR. DRENGUIS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

(9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

On March 23, 2013, Plaintiff was seen by William Drenguis, M.D., for a consultative evaluation. His "Functional Assessment" of Plaintiff was as follows:

> The claimant is a 40-year old female whose massive obesity exacerbates her problems of chronic lumbar sprain, diabetes, and ataxia.[1] She is also found to have a left shoulder impingement syndrome.
>
> Maximum standing and walking capacity in an eight hour workday with normal breaks is about five hours. She is limited by her morbid obesity with deconditioning and chronic lumbar sprain.
>
> Maximum sitting capacity in an eight hour workday with normal breaks is about five hours. She is limited by her chronic lumbar sprain.
>
> . . .
>
> Maximum lifting/carrying capacity: Is 20 pounds occasionally and 10 pounds frequently. She is limited by her chronic lumbar sprain.
>
> Postural activities: The claimant should never climb or balance and may only occasionally stoop, kneel, crouch and crawl. She is limited by her morbid obesity, ataxia and chronic lumbar sprain.
>
> Manipulative activities: The claimant may occasionally reach and

---

[1] Ataxia is typically defined as the presence of abnormal, uncoordinated movements without reference to specific diseases. An unsteady, staggering gait is described as an ataxic gait because walking is uncoordinated. It can also refer to a group of neurological disorders in which motor behavior appears uncoordinated. www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/movement_disorders/ataxia/conditions.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

> has no limitations for handling, fingering or feeling. She is limited by her left shoulder impingement syndrome.

(AR at p. 420).

The ALJ gave "little weight" to Dr. Drenguis' "suggestion the claimant cannot balance," finding this was "inconsistent with her minimal and mild examination findings." (AR at p. 29). The ALJ also gave "little weight" to Dr. Drenguis' "suggestion" that Plaintiff could not sit for more than five hours in an eight hour workday, because his only basis for this was Plaintiff's chronic lumbar sprain and the Plaintiff "inconsistently described the nature of her back pain and did not make significant complaints of back pain to her treating providers." (AR at p. 29). Finally the ALJ gave "little weight" to the doctor's "suggestion" that Plaintiff was capable of only occasional reaching on the basis that this was inconsistent with the Plaintiff's lack of complaint regarding shoulder pain. (AR at p. 29).

The ALJ did not specify the "minimal and mild examination findings" which were purportedly inconsistent with the opinion of Dr. Drenguis that Plaintiff could not balance. As part of his examination findings regarding "Coordination/Station/Gait," the ALJ noted that Plaintiff's "[s]tation was abnormal with a positive Romberg," her gait "was slow and wide based," and she "could not tandem walk because of ataxia." (AR at p. 419). In the Romberg test, a patient stands upright and is asked to close her eyes. A loss of balance is interpreted as a positive Romberg sign. See http:// www.physio-pedia.com/Romberg_Test. Tandem walking is designed to detect abnormalities in gait and balance. It involves asking the patient to walk in a straight line while touching the heel of one foot to the toe of the other with each step. See http://www.neuroexam.com/neuroexam/content38.html. These are not "minimal and mild examination findings," but rather are findings which support Dr. Drenguis' opinion that Plaintiff cannot balance. Dr. Drenguis did not merely "suggest " that Plaintiff could not balance. He opined it unequivocally.

///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

While the Plaintiff did not specifically complain to Dr. Drenguis about left shoulder pain, his examination of Plaintiff clearly supported the left shoulder impingement syndrome which he diagnosed. (AR at p. 420). Left shoulder abduction (arm swinging out from the side of the body in an arm flapping motion) was limited to 90 degrees (normal range is 150 degrees), adduction (arm straight out at the shoulder and bringing it down to the side) was limited to 10 degrees, flexion (motion of the shoulder when lifting the arm in front of the body) was limited to 100 degrees (normal range of motion is 180 degrees), and extension (shoulder motion that involves moving the arm behind the body) was limited to 10 degrees (normal range of motion is between 45 and 60 degrees) . (AR at p. 419).[2] Dr. Drenguis noted that Plaintiff's range of motion "was limited by stiffness." (AR at p. 419). In August 2013, Plaintiff informed Caryn L. Jackson, M.D., that she had previously filed a Department of Labor and Industries (L and I) claim for a left shoulder injury resulting from lifting a dumpster (AR at p. 620), and physical examination showed a decrease in the left shoulder range of motion (AR at p. 622).

Dr. Drenguis did not make out Plaintiff's chronic low back pain to be more than it actually was, nor did the Plaintiff. The Plaintiff informed Dr. Drenguis that she had a greater than 10 year history of chronic low back pain and "[i]t is intermittent in nature and some days she is completely pain free." (AR at p. 417). Even with that, however, Dr. Drenguis thought Plaintiff's sitting capacity was limited by her chronic lumbar sprain. Objective medical evidence in the record supports Plaintiff's claim of chronic lumbar sprain. Imaging results from May 2014 showed

///

///

---

[2] See http://www.livestrong.com/article/46391-normal-range-motion-shoulder/

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

moderate hypertrophic facet arthrosis at the L4,5 and S1 levels.[3] Based on her own statements to Dr. Drenguis, it would not be surprising if there were occasions where she did not make significant complaints of back pain to her providers.

In sum, the ALJ did not offer "specific and legitimate" reasons for discounting the limitations opined by Dr. Drenguis regarding balancing, reaching and sitting. At the administrative hearing, Plaintiff's counsel asked the VE to assume the physical limitations opined by Dr. Drenguis, although he did not specifically mention the prohibition on balancing. (AR at p. 97). The VE identified some jobs he thought Plaintiff might be able to perform with those limitations, including usher and callout operator, otherwise referred to as a credit checker. (AR at p. 98). Plaintiff's counsel then asked the VE to consider the mental limitations which the ALJ included in her hypothetical to the VE.[4] (AR at p. 99). It was from this hypothetical that the VE identified the jobs of office helper, document preparer and final assembler which the ALJ concluded were examples of jobs existing in significant numbers in the national economy which the Plaintiff remained capable of performing. (AR at pp. 93-95).
///

---

[3] Hypetrophic Facet Disease is the degeneration and enlargement of the facet joints to the point where they put pressure on the adjacent nerves in the spine causing pain to radiate along the path of the nerve. See https://www.spine-health.com/glossary/hypertrophic-facet-disease. L4 and L5 are the fourth and fifth vertebra of the lumbar spine. S1 is the first vertebra of the sacral spine.

[4] Understand, remember, and carry out unskilled, routine and repetitive work; cope with occasional work setting change, and occasional interaction with supervisors; work in proximity to coworkers, but not in a team or cooperative effort; perform work that does not require interaction with the general public as an essential element of the job, but occasional, incidental contact not precluded.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

The VE concluded Plaintiff could not perform the usher and callout operator/credit checker jobs:

> Yeah, . . . I'd probably say no work with all those limitations. No people, unskilled work, occasional reaching, I would say no work.

(AR at p. 99).

Furthermore, the VE reached this conclusion without considering Dr. Drenguis' opinion that Plaintiff could not balance. As Plaintiff notes, Social Security Ruling (SSR) 96-9p states that "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base." 1996 WL 374185 at *7.

**ONSET DATE**

Plaintiff became disabled no later than March 23, 2013, the date of the report of Dr. Drenguis. This date is prior to Plaintiff's date last insured for Title II benefits, December 31, 2014. Accordingly, the Plaintiff is entitled to Title II benefits. The question arises, however, whether she should be found disabled prior to March 23, 2013, more specifically on May 10, 2009, the date she alleges she became disabled. At the hearing, Plaintiff testified that May 2009 was when she last worked. (AR at p. 67). Her earnings records and work history report are consistent therewith. (AR at pp. 293, 299 and 322). Plaintiff testified that in May 2009, she was having gout at the time and started experiencing neuropathy[5], making it impossible for her to continue working as a child care attendant. (AR at p. 67).

SSR 83-20 provides:

---

[5] Diabetes can cause nerve damage. Peripheral neuropathy affects the feet and legs. Symptoms include tingling, numbness, burning and pain. See http://www.webmd.com/diabetes/diabetes-neuorpathy#1

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 10**

> Factors relevant to the determination of disability onset include the individual's allegations, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegations or the date of work stoppage is significant in determining onset only if it consistent with the severity of the condition(s) shown by the medical evidence.

Having reviewed the medical record prior to March 23, 2013, specifically the records from Yakima Neighborhood Health Services (YNHS) beginning in January 2009 (AR at pp. 425-534), the court finds there is consistency between those records, the Plaintiff's allegations of disability onset date, and the date Plaintiff stopped working. Nothing in the YNHS records manifestly suggests the limitations opined by Dr. Drenguis in his March 23, 2013 report as arising from Plaintiff's severe medically determinable physical impairments were less severe at anytime between May 10, 2009 and March 23, 2013. Nor is there anything in the record raising a question that the mental limitations found by the ALJ were significantly less severe on or after May 10, 2009, such as would call that date into question as the disability onset date.[6] In sum, there is no conflicting evidence giving rise to an ambiguity warranting a remand to further develop the record (e.g. take testimony from a medical expert) to determine the onset date of disability.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when

---

[6] For example, Tao-Im Moon, Ph.D., noted that Plaintiff had been diagnosed at YNHS with depression in the early 1990s and other mental health diagnoses in the early 2000s. (AR at p. 400). The YNHS records bear out that anxiety and depression have been chronic problems for the Plaintiff for many years, (see e.g., AR at pp. 467 and 538), as do records from Central Washington Comprehensive Mental Health (see e.g.. AR at p. 549).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

"the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985). In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id*., citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

"[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

Here, the three elements set forth in *Treichler* are satisfied: the ALJ failed to provide legally sufficient reasons for rejecting Dr. Drenguis' opinion about Plaintiff's physical limitations, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled as confirmed by the VE's testimony. Therefore, the court will remand for an immediate award of benefits.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 13) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's decision is **REVERSED**. Pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for an immediate award of benefits based on a disability onset date of May 10, 2009. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this   10th   day of July, 2017.

*s/Lonny R. Suko*

---
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**